**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE A. BRUTCHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:11CV1613 ACL |
| | ) | |
| JAY CASSADY,[1] | ) | |
| | ) | |
| Respondent, | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court for review and final disposition of a Petition for Writ of

Habeas Corpus filed by George A. Brutcher ("Petitioner") pursuant to 28 U.S.C. § 2254.[2]  After

reviewing the case, the Court has determined that Petitioner is not entitled to relief.

**Background**

On June 26, 2004, at approximately 1:45 a.m., Zach Naeger, a police officer with the City

of Festus, was on patrol around I-44 and Highway A.  (Resp't Ex. E at 25-26.)  As Officer

Naeger drove past a silver car stopped at a stoplight, the car's horn sounded, catching his

attention.  <u>Id.</u> at 26.  Naeger looked in his review mirror and saw someone in the passenger seat

trying to get out of the car.  <u>Id.</u>  Then the car surged forward and ran the red light.  <u>Id.</u>  Naeger

turned around, activated his emergency lights, and tried to make a traffic stop.  <u>Id.</u> at 26-27.  A

chase ensued.  <u>Id.</u>  William McDaniel, a deputy sheriff with Jefferson County, observed the

pursuit and joined it.  <u>Id.</u> at 29-30.  After the silver car left the City of Festus, Naeger terminated

---

[1] Petitioner is incarcerated at Jefferson City Correctional Center ("JCCC").  When this case was
filed, Dave Dormire was the Warden at JCCC.  Jay Cassady is the current Warden and proper
party respondent.  <u>See</u> 28 U.S.C. § 2254, Rule 2(a).
[2] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this
proceeding.  28 U.S.C. § 636(c).

his pursuit. <u>Id.</u> at 27. Officer McDaniel continued the chase. <u>Id.</u> at 30. Petitioner was the driver of the silver car, and H.C., the victim, was the passenger. <u>Id.</u> at 37, 39.

During the pursuit, Petitioner was driving erratically and fighting with H.C. <u>Id.</u> at 33-34. The car eventually spun out of control and came to a stop in the road. <u>Id.</u> at 36. Petitioner exited the car and took a combative stance against a highway patrolman. <u>Id.</u> Petitioner failed to comply with the patrolman's orders, and McDaniel approached Petitioner from behind and tackled him. <u>Id.</u> at 36-37. H.C. exited the car, crying, screaming, and injured. <u>Id.</u> at 37. Her bottom lip was "busted," her left eye was bruised, and her left cheek was swollen. <u>Id.</u> at 38.

Deputy Sheriff Richard Beattie arrived on the scene after Petitioner had been subdued and handcuffed. <u>Id.</u> at 43. Petitioner was still resisting arrest by trying to get up from the ground and move. <u>Id.</u> Beattie subdued Petitioner by spraying pepper spray on his face. <u>Id.</u> at 44. McDaniel and Beattie took Petitioner to Beattie's car for transport and put him in a "hobble restraint," which is designed to keep the arrestee from moving his legs. <u>Id.</u> at 44-45.

During transport, Petitioner became combative by kicking his legs. <u>Id.</u> at 45. He kicked hard enough to break the hobble restraint. <u>Id.</u> Petitioner then began kicking the vehicle's dashboard. <u>Id.</u> at 46. Beattie exited the car and opened the passenger door, ordering Petitioner to stop kicking. <u>Id.</u> at 47-48. Petitioner continued kicking. <u>Id.</u> Beattie attempted to grab Petitioner's legs, but Petitioner overpowered Beattie and began kicking him in the face. <u>Id.</u> at 48-49. Petitioner kicked Beattie's face three or four times, which stunned him. <u>Id.</u> at 49-50. Another unit arrived and helped Beattie restrain Petitioner. <u>Id.</u> at 51. Beattie went to the hospital, but he did not suffer any serious injuries. <u>Id.</u>

One month later, on July 26, 2004, a $50,000 bond was posted for Petitioner on the charges for domestic assault, resisting arrest, assault on a law enforcement officer, and property

damage. (Resp't Ex. F at 218-19.) The conditions of the bond prohibited Petitioner from tampering with a witness or having any contact with H.C. Id. at 219-20.

On July 30, 2004, H.C. visited a family friend, Vaughn Kellerman, who resided at No. 88 Rex-Aire. (Resp't Ex. E at 92.) When H.C. left Kellerman's she discovered that someone had stolen her purse and spare key from her car, so she went back into Kellerman's home to call the police. Id. at 93-94. Deputy Fred Lewis responded to the call at around 11:00 p.m. Id. at 59. When he arrived, H.C. told him that her purse had been stolen from her car and that she believed Petitioner had stolen it. Id. at 60. While he was speaking with H.C., Lewis received an emergency call. Id. 60. Before leaving, Lewis gave H.C. an affidavit of cooperation and witness statement to complete, and told her he would return as soon as he finished with the emergency call. Id. at 60-61, 94.

H.C. started writing her statement inside Kellerman's home. Id. at 95. While she was sitting on the couch writing her statement, Petitioner kicked the door in and entered the trailer. Id. at 95. Petitioner was carrying a knife. Id. at 96. Petitioner asked H.C. what she was writing down, and he said something to the effect of "I will kill you, bitch," as he lunged forward and stabbed her in the arm. Id. Kellerman grabbed Petitioner's hand and wrestled with him. Id. Petitioner was too strong, however, and he was able to stab H.C. in the chest and back before she escaped from the trailer. Id. at 96-97. Petitioner said to Kellerman, "I'll kill you," and then he ran after H.C. Id. at 97.

H.C. ran across the street to the home of Mark Berger. Id. at 97, 137. The door was unlocked and she let herself in. Id. at 138. Berger was home with his fiancé and his seven year old daughter. Id. at 138, 142. Berger had never seen H.C. before. Id. at 138. H.C. said, "Help, he's killing me. Help," and kept screaming for help. Id. Petitioner then forced his way into the

house by pushing and hitting at Berger. Id. at 139. Once Petitioner got in, he brandished the knife at Berger, threatening to kill him. Id. at 140. Petitioner also said, "I'm going to kill that bitch." Id. Petitioner then swung his knife at Berger twice, just missing his face and throat. Id. at 140-42. Berger struck Petitioner once and knocked him down. Id. at 142. Then Berger ran to the back of his trailer, grabbed his daughter, and exited through the rear door. Id. at 142-43. As Berger was leaving, he looked back and saw Petitioner stabbing H.C. in the neck and chest. Id. at 144. H.C. was screaming for help, and Petitioner was yelling, "I'm gonna kill you bitch, you did me wrong." Id. at 145. Berger, his fiancé, and his daughter drove to the landlord's office to call for help. Id. at 146.

Kellerman saw H.C. exiting Berger's home covered in blood. Id. at 99. H.C. was weak, and Kellerman hid her about a block away between some trailers. Id. at 99-100.

At about 11:40 p.m. Deputy Lewis was dispatched back to Kellerman's home, because of a disturbance call. Id. at 61. He arrived on the scene shortly after Kellerman hid H.C. Id. at 100. Upon the officer's arrival, Berger told Lewis that a man was stabbing H.C. at his house. Id. at 61. Backup units arrived, including Lieutenant Marshak. Id. at 62. Lewis and Marshak entered Berger's house and found significant amounts of blood and other indications that a fight had occurred there. Id.

Lewis left Berger's house to look for H.C.; he found her about two blocks away. Id. at 63. Lewis observed several puncture wounds to H.C.'s face, hands, chest, back, and neck; she was bleeding profusely. Id. at 66.

An ambulance arrived shortly thereafter. Id. at 66-67. The paramedic, Brian Lalumandier, observed that H.C. had several puncture wounds to her face, neck, chest, back, and abdomen. Id. at 86-87. A wound on her chest and a wound on her back were "bubbling,"

indicating that H.C.'s lungs were collapsing.  Id. at 87-88.  Lalumandier dressed H.C.'s wounds, started IV fluids, and gave her oxygen while transporting her to St. Anthony's Hospital.  Id. at 87-89.

Dr. Edmond K. Ng was the trauma surgeon on call at St. Anthony's.  Id. at 117-19.  Dr. Ng examined H.C. upon her arrival at the hospital and determined that H.C. had suffered seventeen separate stab wounds.  Id. at 119.  He inserted two thoracostomy tubes to decompress her pneumothorax injuries and did extensive laceration repairs.  Id.  Dr. Ng testified that H.C.'s pneumothorax injuries were life-threatening.  Id.  The injuries resulted in serious disfigurement to H.C.'s face.  Id. at 127-29.

On the following day, July 31, 2004, officers received information that Petitioner could be found at 513 Jackson Way.  Resp't Ex. F at 178, 209.  When the officers arrived, they were let into the house and found Petitioner seated in the kitchen.  Id. at 172, 181.  There were blood smears near the front entrance of the house and near the kitchen table.  Id. at 184-85.  After receiving consent to search the premises, the officers seized a bloody T-shirt and a washcloth.  Id. at 171-74, 182-83.  Petitioner did not resist the officers, who arrested him and took him to the Jefferson County Jail.  Id. at 176, 181, 209.

While being transported to the jail, Petitioner asked Corporal Steven Tilley how H.C. was doing.  Id. at 185-86.  Tilley responded that he did not know, and Petitioner said, "I'm going to get the death penalty for this one."  Id. at 186.  At that point, Tilley read Petitioner his Miranda rights.  Id.

When Petitioner arrived at the Jail, his jeans appeared to have blood on them.  Id. at 210.  A deputy seized his jeans and gave him a prison uniform.  Id. at 209-210.  Petitioner said to the deputies at intake, "you want to take my clothes, you want to take them to the State, aren't you.

Get that blood out of them. I wish they had more fucking blood on them." <u>Id.</u> at 199. He then chuckled and said, "I hope that bitch fucking dies. She got what she deserves." <u>Id.</u>

The DNA from the blood at the crime scene, the T-shirt, and Petitioner's jeans all matched H.C.'s. <u>Id.</u> at 288-294.

The state charged Petitioner by Fifth Amended Information with felonious restraint, resisting arrest, assault of a law enforcement officer in the first degree, two counts of assault in the first degree, two counts of burglary in the first degree, victim tampering, unlawful use of a weapon, and five counts of armed criminal action. (Resp't Ex. G at 46-52.) A jury found Petitioner guilty on all counts. (Resp't Ex. H at 161-75.) The trial court sentenced Petitioner to life imprisonment plus one hundred and nine years. <u>Id.</u> at 194-97.

On direct appeal, Petitioner argued that (1) the trial court abused its discretion when it denied his motion to strike venireperson Heather Denbow for cause because she was biased in favor of law enforcement; (2) the trial court abused its discretion when it denied his motion to sever, or in the alternative, to dismiss for improper joinder; (3) the trial court erred and abused its discretion when it overruled his objection and allowed Deputy Lewis to testify that H.C. told him she believed that Petitioner had stolen her purse; and (4) the trial court erred when it overruled his objection to the verdict director for witness tampering and in giving Instruction No. 20. (Resp't Ex. J at 17-21.) The Missouri Court of Appeals affirmed. (Resp't Ex. M at 2.)

Petitioner filed a timely motion for post-conviction relief under Rule 29.15. (Resp't Ex. O at 7-87.) Counsel filed a superseding amended motion. <u>Id.</u> at 90-200. In the amended motion, Petitioner alleged that trial counsel was ineffective for (1) failing to file a motion to dismiss Counts VII and IX of armed criminal action; (2) failing to object to the state's post-trial sentencing recommendation of life plus 116 years; (3) referring to Petitioner as a "monster"; (4)

disclosing during voir dire that Petitioner had prior felony convictions; and (5) failing to file an application for change of judge in the Jefferson County Circuit Court. (Resp't Ex. P at 221-22.) The motion court denied Petitioner's claims after holding an evidentiary hearing. Id. at 222-29.

Petitioner raised the same five grounds on appeal. (Resp't Ex. Q at 20-27.) The Missouri Court of Appeals applied the familiar Strickland standard and affirmed, finding that counsel's trial strategy was reasonable and that Petitioner failed to demonstrate prejudice. (Resp't Ex. S at 1-5.)

Petitioner timely filed the instant Petition on September 12, 2011. Petitioner raises nine grounds for relief: (1) the trial court erred in denying a challenge for cause to venireperson Heather Denbow, because she had a disqualifying bias in favor of Jefferson County law enforcement; (2) the trial court abused its discretion in denying Petitioner's motion to sever Counts I, II, and III from the remaining eleven counts; (3) the trial court abused its discretion in overruling his objections and allowing Deputy Lewis to testify about H.C.'s statements, which were admitted for the truth of the statements; (4) the trial court erred in overruling his objection to the verdict director for Count X, because the evidence was insufficient to show that H.C. was the victim of first degree domestic assault; (5) trial counsel was ineffective for failing to file a motion to dismiss Counts VII and IX charging armed criminal action, because the state failed to present evidence that he used the knife to gain entry into the homes of Kellerman or Berger; (6) trial counsel was ineffective for failing to object to the state's post-trial sentencing recommendation of life plus 116 years on the ground the sentence was excessive; (7) trial counsel was ineffective for referring to Petitioner as a "monster" to the jury; (8) trial counsel was ineffective for disclosing during voir dire that Petitioner had prior felony convictions; and (9)

trial counsel was ineffective for failing to file an application for change of judge in the Jefferson County Circuit Court.

## Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus. . .only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Owens, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006); Rousan v. Roper, 436 F.3d 51, 956

(8th Cir. 2006).  In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  <u>Williams</u>, 529 U.S. at 411.

**Discussion**

      1.   <u>Ground One</u>

      In ground one, Petitioner argues that the trial court erred in denying a challenge for cause to venireperson Heather Denbow, because she had a disqualifying bias in favor of Jefferson County law enforcement.  During voir dire, Denbow stated that her father had been a Jefferson County police officer for several years and that she might be inclined to believe the officers' testimony.  (Resp't Ex. M at 3.)  Upon questioning by the prosecutor, Denbow said that she would try to put aside what she knew about the officers and follow the court's instructions, assessing the credibility of each witness individually.  <u>Id.</u>  Defense counsel asked Denbow if the fact that her father was a former officer could affect her determination of witness credibility "in any way."  <u>Id.</u> at 4.  Denbow replied, "It could, yes."  <u>Id.</u>  She also said, "I would do my best for it not to, but . . ."  <u>Id.</u>  The trial court refused defense counsel's request to dismiss Denbow for cause.  <u>Id.</u> at 5.

      The Missouri Court of Appeals found that Denbow's "responses on voir dire were not sufficiently equivocal to indicate a bias in favor of police officers."  <u>Id.</u> at 7.  The court noted that Denbow stated she would try to put her preconceptions aside and that she thought she could follow the trial court's instructions.  <u>Id.</u>  The appellate court also found that Petitioner failed to demonstrate prejudice, because the more incriminating evidence came from the lay witnesses

and because Petitioner did not challenge the evidence regarding the charges of resisting arrest or assault on a police officer.  Id. at 8.

The trial court is in the best position to assess the potential juror's credibility, and its decision whether or not to strike a venireperson for cause is entitled to "special deference." Patton v. Yout, 467 U.S. 1025, 1038 (1984); see Williams v. Norris, 576 F.3d 850, 867 (8th Cir. 2009) ("deference must be paid to the trial judge who sees and hears the juror.").  Ambiguous and contradictory testimony from venirepersons is commonplace.  See Patton, 467 U.S. at 1039. Ambiguity in the testimony of venirepersons "is insufficient to overcome the presumption of correctness owed to the trial court's findings."  Id. at 1040.

The Missouri Court of Appeals' decision is consistent with Patton.  Although Denbow's testimony was somewhat ambiguous, the trial court was best suited to determine whether she could overcome her preconceptions about law enforcement and assess each witness individually. The appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  As a result, Petitioner is not entitled to relief on ground one of his Petition.

2.      Ground Two

In ground two, Petitioner argues that the trial court abused its discretion in denying his motion to sever Counts I, II, and III from the remaining eleven counts.  Counts I (felonious restraint), II (resisting arrest), and III (assault on a law enforcement officer) pertain to Petitioner's arrest on June 26, 2004.  The remaining counts pertain to the attack on July 30, 2004. (Resp't Ex. G at 46-52.)

The charges were initially brought in three separate cases.  Id. at 54, 92-94.  The state moved for joinder of the charges, because they were connected together in that the "purpose and

intent of the defendant in his commission of the assault first and burglary first charges was to tamper with the victim (H.C.). . . His intent was to kill the victim so she could not testify against him [on the June 26, 2004, charges]." Id. at 54. The court granted the motions.

Petitioner moved the trial court to separate the counts, arguing that the jury would likely consider guilt on one charge as evidence on another charge. Id. at 67. Petitioner further argued that the number of victims and the different dates on the charges would likely confuse the jury. Id. The trial court denied the motion.

The Missouri Court of Appeals examined the issue under state law. Section 545.140 of the Missouri Revised Statutes allows for joinder of charges if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Resp't Ex. M at 9.) The appellate court agreed that "the June 26 charges were connected with the July 30 charges." Id. at 10. The court reasoned:

> the events from each date were united by Brutcher's animus toward [H.C.], his desire to injure her, and his desire to keep her from testifying against him. On June 26, 2004, Brutcher was discovered fighting with [H.C.] while driving erratically. [H.C.] suffered injuries, resulting in a charge of domestic assault. Brutcher was also charged with resisting arrest and assault of a law enforcement officer based on his actions toward police subsequent to injuring [H.C.]. Only a few days after Brutcher's release on bond stemming from the June 26 charges, Brutcher attacked [H.C.] a second time on July 30, 2004. In addition to the assault and unlawful use of a weapon charges, Brutcher was charged with victim tampering. Significantly, the July 30 victim tampering charge related specifically to Brutcher's attempt to keep [H.C.] from testifying against him or assisting in any prosecution against him on the domestic assault charge stemming from June 26.

Id. at 10-11 (footnote omitted). The appellate court further found that Petitioner had failed to show prejudice from the joinder of the charges. Id. at 11.

Respondent contends that this ground for relief is not cognizable, because there is no clearly established Supreme Court precedent recognizing a constitutional right to severance of charges.

This Court identified one opinion from the Supreme Court that addressed the issue of severance as a ground for relief in federal habeas proceedings. See Ashe v. U.S. ex rel. Valotta, 270 U.S. 424 (1926). The decision relayed that Valotta was convicted of killing a man in a street brawl, as well as killing a police man who pursued Valotta after Valotta shot the first man. Id. at 425. A federal District Court Judge granted habeas relief on the grounds that "Valotta was tried upon two indictments for felony at the same time and was deprived of the full number of challenges that he would have had if he had been tried separately upon each." Id. The Supreme Court reversed the district court's grant of habeas relief, finding that there would not be a due process violation if the state told the story of both murders to a jury in the same trial. Id. at 425-26.

In a pre-AEDPA case, the Court of Appeals for the Eighth Circuit held that in challenging a state trial court's refusal to sever the counts from one another, the petitioner "bears a heavy burden." Hollins v. Dep't of Corrections, State of Iowa, 969 F.2d 606, 608 (8th Cir. 1992). "Regardless of the state law governing severance in state trials, [federal courts] will not grant relief to a habeas petitioner on this issue unless he can establish that the failure to grant severance rendered the trial 'fundamentally unfair.'" Id. The standard enunciated in Hollins is consistent with the standard for due process violations. See Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). In Anderson the court stated that "a federal court's review of alleged due process violations stemming from a state court conviction is narrow," and the court further stated that habeas relief is warranted only where the petitioner:

shows that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair. To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.

Id. at 679 (quotations omitted).

The Court finds that this issue is properly analyzed under the standard for alleged due process violations. The Court gives appropriate deference to the state court's determination that Petitioner failed to demonstrate prejudice.

In his traverse, Petitioner argues at length that joinder was improper, because the charges were not "connected." Petitioner then claims, "[w]hen joinder is improper, prejudice is presumed and severance is mandatory." Petitioner's only other allegation of prejudice is his conclusory statement that "the jury was likely to consider the evidence in Counts 1, 2, and 3, against [him] in considering whether he was guilty of Counts 4-14."

Petitioner has failed to show that, absent the joinder of the charges, he would have been acquitted on any of the counts in the Fifth Amended Information. The Missouri Court of Appeals' finding that Petitioner failed to demonstrate prejudice was not contrary to, or an unreasonable application of, clearly established federal law. As a result, Petitioner is not entitled to relief on ground two of his Petition.

3.     Ground Three

In ground three, Petitioner argues that the trial court abused its discretion in overruling his objections and allowing Deputy Lewis to testify about H.C.'s statement to him that she thought Petitioner had stolen her purse. Petitioner claims the testimony was given for proving the truth of the matter asserted, i.e., that Petitioner had stolen her purse. Petitioner further claims that the trial court erred in admitting the written statement H.C. had begun writing just before Petitioner attacked her, because it was inadmissible hearsay.

The Missouri Court of Appeals found that neither Deputy Lewis's testimony about H.C.'s statement nor H.C.'s written statement were admitted for the truth of the matter asserted. "Brutcher was not charged with stealing H.C.'s purse. As the State argued at trial, Deputy Lewis's testimony about H.C.'s statement was offered to explain subsequent police conduct, a permissible reason for admitting an out-of-court statement." (Resp't Ex. M at 13.) The court further stated,

> [H.C.]'s written statement was also not offered to prove the truth of the matter asserted., i.e., that Brutcher stole her purse, but instead to explain the chain of events leading to [H.C.]'s injuries. Specifically, the State offered [H.C.]'s witness statement to show the abrupt nature of Brutcher's attack and why Deputy Lewis subsequently returned to the scene to retrieve the statement.

Id.

The appellate court's characterization of the trial transcripts is correct. Whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited jurisdiction. Estelle v. McGuire, 502 U.S. 62, 67 (1991). This ground is not cognizable in habeas proceedings. As a result, Petitioner is not entitled to relief on ground three of his Petition.

    4.    Ground Four

In ground four of the Petition, Petitioner argues that the trial court erred in overruling his objection to the verdict director for Count X, victim tampering, because the evidence was insufficient to show that H.C. was the victim of first degree domestic assault, one of the elements of the victim tampering offense.

On direct appeal, Petitioner argued that the elements of first degree domestic assault had not been met, because "[t]he State did not present substantial evidence to support a finding that [Petitioner] and [H.C.] ever resided together or had been in a continuing social relationship of a romantic or intimate nature." (Resp't Ex. J at 51.)

The Missouri Court of Appeals reviewed the claim with deference to the verdict: "When determining whether sufficient evidence was presented from which a juror could find the defendant guilty beyond a reasonable doubt, we accept as true all evidence and inferences in the light most favorable to the verdict and reject all contrary evidence and inferences." (Resp't Ex. M at 14.) The appellate court found sufficient evidence in the record to support a finding that Petitioner and H.C. had been in a continuing relationship of a romantic or intimate nature. Specifically, Deputy Lewis and Kellerman testified that Petitioner was H.C.'s boyfriend; the order of protection found in Petitioner's car listed him as H.C.'s ex-boyfriend; and Petitioner interrupted the state's closing arguments, stating that H.C. still loved him and forgave him for what he had done. Id. at 16-17.

In reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this standard, the scope of review is extremely limited. The Court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the Court must defer to that resolution. Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003).

The Missouri Court of Appeals applied the correct standard, and its decision was reasonable. The evidence cited by the appellate court was sufficient for a rational juror to conclude that Petitioner and H.C. had been in a continuing romantic relationship. As a result, Petitioner is not entitled to relief on ground four of the Petition.

5.      Ground Five

In ground five, Petitioner alleges that trial counsel was ineffective for failing to file a motion to dismiss Counts VII and IX of armed criminal action, because the state failed to present evidence that he used the knife to gain entry into the homes of Kellerman or Berger.

The Missouri Court of Appeals denied this claim, because the charging document was sufficient under the "applicable Missouri Approved Charges-Criminal," and therefore, any objection would not have been meritorious.  (Resp't Ex. S at 3.)  The court found that Petitioner had failed to prove the performance prong of the Strickland test.  Id.

Under Missouri law, "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."  Mo. Rev. Stat. § 571.015.1.

The language in Counts VII and IX in the Fifth Amended Information sets forth the elements in the armed criminal action statute, specifically, that Petitioner "committed the felony of burglary in the first degree by, with, and through the use, assistance, and aid of a dangerous instrument."  As a result, any motion to dismiss would have been meritless, and counsel was not ineffective for failing to file such a motion.  Petitioner is not entitled to relief on ground five of the Petition.

6.      Ground Six

In ground six, Petitioner alleges that trial counsel was ineffective for failing to object to the state's post-trial sentencing recommendation of life plus 116 years, because the sentence was excessive.  Specifically, Petitioner alleges that because the state offered him a lower sentence before trial in exchange for a plea agreement, the trial court must have punished him for exercising his right to a trial by imposing a longer sentence.

The Missouri Court of Appeals affirmed because "a sentence is not excessive if it is within the range authorized by statute." (Resp't Ex. S at 3.) The court found that counsel could not have been ineffective for failing to raise a non-meritorious objection. Id.

"The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. A sentence within the statutory limits is generally not subject to Eighth Amendment review." United States v. Atteberry, 447 F.3d 562, 565 (8th Cir. 2006) (quotations and citations omitted). The appellate court's finding that the sentence was not excessive, because it was authorized by statute was not contrary to, or an unreasonable application of, clearly established federal law. The fact that the sentence was greater than that offered by the state in a plea bargain does not show that the trial court punished Petitioner for exercising his right to go to trial. Therefore, Petitioner is not entitled to relief on ground six of his Petition.

7.     Ground Seven

Petitioner claims that trial counsel was ineffective for referring to him as a "monster" to the jury.

During closing argument, trial counsel made the following remarks:

What was his purpose for going in there to talk to [H.C.]? Was it because she falsely accused him of Domestic Assault First. . . . Was it because she falsely accused him of stealing her purse because they were having some boyfriend girlfriend problems? . . .

That's not in the instructions. He was not charged with that. George was obviously upset that night. Does that make it okay? No. But it explains that we don't live in a vacuum. Here this monster comes out and starts stabbing his girlfriend seventeen times for no reason.

There's reasons. You got to look at this objectively.

(Resp't Ex. F at 338-39.)

During the post-conviction hearing, trial counsel testified that he was trying to argue that Petitioner was not a monster. He said,

17

Well, all I can say, I was in the heat of the moment in the closing argument, I didn't have much to work with anyway, given the witnesses and the charges had, and the multiple charges, and I was trying to tell the jury, look, you know, this monster came out of him, we don't know where it came from, that was my intention to try to say, this is not a characteristic of George. I didn't say he is a monster for doing this.

(Resp't Ex. N at 99-100.)

The Missouri Court of Appeals affirmed the denial of relief on this ground. The court stated, "in cases involving overwhelming evidence of guilt, a strategy to humanize one's client is not so unreasonable as to be ineffective." (Resp't Ex. S at 4.) And the court found that the evidence of Petitioner's guilt was overwhelming.

Given the evidence presented at trial, which included eye witness testimony, DNA evidence, and Petitioner's admissions, the Court cannot say that the appellate court's determination on this issue was either unreasonable or contrary to clearly established federal law. The evidence of Petitioner's guilt was overwhelming. Petitioner cannot demonstrate Strickland prejudice. As a result, Petitioner is not entitled to relief on ground seven of the Petition.

8.     Ground Eight

In ground eight, Petitioner argues that trial counsel was ineffective for disclosing during voir dire that Petitioner had prior felony convictions.

Before the trial began, trial counsel anticipated that Petitioner would testify on his own behalf. (Resp't Ex. N at 102.) Trial counsel brought up the felonies during voir dire so that it would not be a surprise to the jury when they heard about them on cross-examination by the prosecutor. Id. Counsel "wanted to defuse that situation." Id.

At the close of the state's evidence, the prosecutor informed the court that he had just received a recording of a phone call Petitioner made from jail that would incriminate Petitioner if he were to testify. (Resp't Ex. F at 305.) Defense counsel notified the court that he needed to

inform Petitioner of the recording before he began testifying.  <u>Id.</u>  It was near five o'clock at that time, so the court notified the jury the case was in recess until the following morning.  <u>Id.</u> at 306.

The recording was taken from a telephone call Petitioner made from the Jefferson County Jail the day before the trial began.  (Resp't Ex. N at 123.)  The recording was played at the evidentiary hearing on Petitioner's Rule 29.15 motion.  On the recording, Petitioner called a woman named Shannon.  <u>Id.</u> at 138.  Petitioner convinced Shannon to make a three-way call on her cell phone to H.C. so that he could talk to H.C.  <u>Id.</u> at 141-42.  Petitioner told H.C. that he was going to get life in prison unless she testified at trial that he was not the person who stabbed her.  <u>Id.</u> at 145, 149.  Petitioner continuously cajoled H.C. to testify falsely at trial.  <u>Id.</u>

Trial counsel testified at the hearing that he listened to the recording and discussed it with Petitioner the night he received it.  <u>Id.</u> at 151.  He further testified that after discussing it with Petitioner, Petitioner decided not to testify.  <u>Id.</u>

At the start of trial the following day, counsel informed the court that Petitioner did not wish to testify.  (Resp't Ex. F at 306.)  The trial court questioned Petitioner, and Petitioner told the trial court it was his choice not to testify.  <u>Id.</u> at 307.

The Missouri Court of Appeals denied relief on this claim, finding that "[i]t is not unreasonable for an attorney to mention his client's previous convictions during *voir dire* if, at that time, he had a good faith intention that his client would testify at trial."  (Resp't Ex. S at 4.)  "It was only later when trial counsel learned that the State intended to present a very damaging phone conversation between [Petition]er and the victim that it was decided [Petition]er would not take the stand."  <u>Id.</u>

Trial counsel's reasoning for introducing Petitioner's criminal history during voir dire was not unreasonable.  Counsel could not have been aware that Petitioner would engage in

additional witness tampering the day before trial.  The Missouri Court of Appeals' application of Strickland was neither unreasonable nor contrary to clearly established federal law.  As a result, Petitioner is not entitled to relief on ground eight of his Petition.

       9.     Ground Nine

In ground nine, Petitioner argues that trial counsel was ineffective for failing to file an application for change of judge in the Jefferson County Circuit Court, because the judge had previously granted H.C.'s ex parte application for an order of protection.  Petitioner believed the judge had already decided he was guilty when the judge signed the order of protection.

At Petitioner's preliminary hearing, the case was originally assigned to Judge Timothy Patterson.  (Resp't Ex. G at 8.)  In December 2005, Judge Patterson recused himself.  Id. at 14-15.  The state then moved for a change of judge as a matter of right, and the case was reassigned to Judge Dennis Kehm.  Id. at 15.  Petitioner then moved for a change of judge as a matter of right, and the case was reassigned to Judge Gary Kramer.  Id.  In July 2004, while Petitioner was in custody from the first incident, Judge Kramer reviewed H.C.'s application for an ex parte order of protection, and he granted the ex parte motion.  (Resp't Ex. F at 261.)

During the evidentiary hearing on Petitioner's motion for post-conviction relief, trial counsel testified that he thought any motion for change of judge would have been denied, because the fact that Judge Kramer signed the ex parte order did not constitute prejudice against Petitioner.  (Resp't Ex. N at 106-08.)  Counsel further testified that he believed Judge Kramer to be "one of the more fair judges in [the] circuit" in sentencing criminal defendants.  Id. at 108.

The Missouri Court of Appeals denied relief on this claim, finding that counsels' decision was reasonable and that Petitioner had not demonstrated prejudice.  The court stated, "It is reasonable trial strategy for counsel not to request a change of judges if counsel is familiar with

the judge[s] and believes it is in his client's best interest not to change."  (Resp't Ex. S at 4-5 (alteration in original)).  The court further stated that Petitioner could not show prejudice, because of the overwhelming evidence of his guilt.  Id. at 5.

The Missouri Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Counsel was familiar with the judges in the circuit, and counsels' decision to stay with the judge he thought was fair was not unreasonable. The evidence of guilt was overwhelming.  Petitioner cannot show prejudice on any of his ineffective assistance claims.  As a result, Petitioner is not entitled to relief on ground nine of the Petition.

### Conclusion

For these reasons, Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED** with prejudice.

A separate Judgment will be entered with this Memorandum and Order.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2014.